[No. B227191. Second Dist., Div. Four. July 18, 2011.]

TUTTI MANGIA ITALIAN GRILL, INC., et al, Plaintiffs and Appellants, v. AMERICAN TEXTILE MAINTENANCE COMPANY, Defendant and Respondent.

## Counsel

Anthony A. Sears for Plaintiffs and Appellants.

Law Offices of Lawrence D. Levine and Lawrence D. Levine for Defendant and Respondent.

## Opinion

## MANELLA, J.—

### INTRODUCTION

Tutti Mangia Italian Grill, Inc. (TMIG), and Absolutely Italian Claremont, Inc. (AIC, collectively appellants), appeal from a judgment of the superior court confirming arbitration awards against them. They contend the judgment should be reversed and the arbitration awards should be vacated because (1) the arbitration provisions are invalid, and (2) respondent American Textile Maintenance Company failed to file a petition to compel arbitration. Finding no error, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

On January 21, 2010, appellants filed a complaint for declaratory relief in Los Angeles Superior Court. In the complaint, TMIG alleged that it is "purportedly a party to a written agreement with [respondent] dated January

30, 2009, for the provision of restaurant linens." The written agreement, attached as exhibit A to the complaint, shows that Todd Christian, whose title was "General Manager," signed the agreement on behalf of TMIG. The agreement contained an arbitration clause providing that "[u]nless the monetary sum sought is within the jurisdiction of the Small Claims Court, any and all disputes with respect to this Agreement shall be resolved pursuant to the rules of the American Arbitration Association, at its Los Angeles Office." In the first cause of action, TMIG sought a judicial determination (1) that Christian did not have authority to execute the agreement and bind it to the terms thereof; (2) that the damages claimed by respondent under the agreement were illegal liquidated damages; and (3) that the arbitration clause was unenforceable under California law.

Similarly, AIC also sought declaratory relief and a judicial determination of its obligations under "a written agreement with [respondent] dated January 8, 2008, for the provision of restaurant linens." The agreement, attached as exhibit B to the complaint, shows that it was signed by Ed Inglese, the president of AIC. It contained an arbitration clause identical to that in the agreement between TMIG and respondent. It also provided that the agreement "will automatically renew for an additional 12 months, unless [respondent] receives [written] notice of termination." In the second cause of action, AIC sought a judicial determination (1) that the damages claimed under this agreement were illegal liquidated damages; (2) that the arbitration clause was unenforceable under California law; and (3) that the contract expired on January 8, 2009, and was not renewed.

Respondent did not answer the complaint, but instead filed a petition to confirm an arbitration award against TMIG and for attorney fees and costs.[1] In the petition, respondent alleged (1) that TMIG had "prematurely terminated" the written agreement; (2) that respondent had sent a "Demand for Arbitration" to TMIG and filed a copy of the demand with the American Arbitration Association (AAA); (3) that an arbitrator had been appointed and the parties had been notified of the fact; (4) that an arbitration hearing had occurred on January 12, 2010; (5) that TMIG had elected to not participate in the arbitration process for reasons stated in several letters from TMIG's counsel; (6) that an arbitration award in favor of respondent had been made on January 20, 2010; and (7) that TMIG had been served with a copy of the arbitration award.

---

[1] The arbitration award against TMIG had been rendered the day before appellants filed their declaratory relief action.

Respondent attached as an exhibit to the petition a January 6, 2010 letter from TMIG's counsel, stating that TMIG's position was that "the document signed by [its] former employee, Todd Christian, was neither authorized [n]or ratified" and that "[t]he issue of whether a valid and enforceable arbitration clause exists [was] within the sole jurisdiction of the Superior Court." In support of the latter contention, TMIG's counsel cited *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185 [94 Cal.Rptr.3d 918] (*Gilbert Street*), in which the appellate court held that an arbitration clause incorporating a future arbitration rule did not clearly and unmistakably allow the arbitrator to determine arbitrability. (*Id.* at pp. 1190–1191.) The January 6 letter also referenced Code of Civil Procedure section 1281.2, which authorizes a party to file a motion to compel arbitration where the other party declines to participate in arbitration.[2]

In the arbitration award, attached as an exhibit to respondent's petition to confirm, the arbitrator addressed the arguments raised by TMIG's counsel. The arbitrator determined that he could rule on whether a valid and enforceable clause existed under rule R-7(a) of the Commercial Arbitration Rules and Mediation Procedures of the AAA. He distinguished *Gilbert Street* from the instant case on the ground that rule R-7(a) was enacted in 2000 and the instant agreement was entered into on January 30, 2009. Thus, the arbitration clause did not incorporate a future arbitration rule; rather, it incorporated a preexisting rule. The arbitrator also determined that the agreement was self-executing, and because it was self-executing, respondent was not required to resort to section 1281.2 prior to proceeding with the arbitration. Finally, the arbitrator found that the agreement "was signed by Todd Christian as General Manager of [TMIG] which fact was confirmed by witness testimony at the [Arbitration] Hearing namely by Mr. Maximo Escobar who, on behalf of [respondent], signed the Agreement concurrently. Testimony established that Mr. Christian was in fact holding himself out as the General Manager and as one authorized to sign. There was never any disavowal of said Agreement by [TMIG] who impliedly accepted the benefits of same by operating thereunder."

In support of the petition to confirm the arbitration award, respondent also attached declarations by two of its employees, Cesar Velasco and Escobar, explaining the circumstances of the execution of the agreement by Christian. Although Velasco and Escobar described the events from their respective viewpoints and signed the declarations under penalty of perjury, they did not explicitly state that their declarations were made on the basis of personal knowledge.

---

[2] All further statutory citations are to the Code of Civil Procedure unless otherwise stated.

In addition to the petition to confirm the arbitration award, respondent also filed a motion to strike the first cause of action by TMIG on the basis that it had no merit in light of the arbitration award. In support, respondent attached a declaration by Lawrence D. Levine attaching certain correspondence. He did not aver that the declaration was made on the basis of personal knowledge.

Respondent also filed a motion to strike the second cause of action by AIC, or to abate that cause of action. In support, respondent attached declarations by Pete Calzada and Levine. Calzada stated that he found no written notice from AIC that the AIC agreement had been terminated. Levine's declaration attached copies of correspondence between him and AIC's counsel.

Appellants filed a consolidated opposition to the petition to confirm the arbitration award and to the motions to strike. They also objected to all of the declarations on the basis that the declarations failed to state that they were made on the basis of personal knowledge. After a hearing and supplemental briefing, on May 3, 2010, the superior court issued its ruling granting the petition to confirm the arbitration award against TMIG, awarding attorney fees and costs related to that petition, and striking the first cause of action in the complaint. In its order, the superior court determined that Christian was an ostensible agent of TMIG, and that TMIG had ratified the contract by accepting the benefits of the agreement. The court also determined that because the arbitration clause was self-executing, respondent was not required to petition the court for an order compelling arbitration prior to proceeding with the arbitration. The court noted that the arbitration clause also permitted "the arbitrator to render a valid ex parte award when one party fails to appear at the arbitration" because under rule R-29 of the Commercial Arbitration Rules and Mediation Procedures of the AAA, " '[t]he arbitration may proceed in the absences [sic] of any party or representative who, after due notice, fails to be present or fails to obtain a postponement.' " As an alternative ground for finding a valid arbitration clause, the court held that TMIG had waived any right to contest the arbitration clause by participating in the arbitration process.

The court rejected the argument that the damages awarded by the arbitrator constituted illegal liquidated damages. The court sustained appellant's objections to "the declarations of Lawrence Levine, Cesar Velasco, and Maximo Escobar" on the ground that "they fail[ed] to state they are based on personal knowledge." The court did not mention the declaration of Calzada, and it did not specify whether the declaration of Levine with respect to the AIC matter was being stricken. Finally, the court noted that an arbitrator had issued an

arbitration award against AIC on February 17, 2010, but that respondent had not moved to confirm that award.

On May 26, 2010, respondent filed a petition to confirm the arbitration award against AIC. After a hearing, the court granted the petition on June 28, 2010. A judgment pursuant to the court's orders was entered on July 22, 2010. The judgment also dismissed the complaint with prejudice. Appellants filed a timely notice of appeal from the judgment.

## DISCUSSION

On appeal, appellants contend (1) that respondent was required to seek an order compelling arbitration under section 1281.2 prior to proceeding with the arbitration; (2) that the trial court's evidentiary rulings on the declarations of Velasco, Escobar, and Levine left no admissible evidence to sustain the petitions to confirm the arbitration awards; (3) that the trial court erred in finding TMIG had participated in the arbitration process; and (4) that the trial court erred by treating the motions to strike as motions for judgments on the pleadings. We address each of these contentions in turn.

### A. *Section 1281.2*

Section 1281.2 provides that subject to certain enumerated exceptions, "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ." Section 1281.2 was "designed to afford a remedy where the parties have not provided for the contingency that has arisen or where the contractual scheme has failed." (*Brink v. Allegro Builders, Inc.* (1962) 58 Cal.2d 577, 580 [25 Cal.Rptr. 556, 375 P.2d 436].) In their briefs and at oral argument, appellants contended that where one party refuses to arbitrate, a party seeking arbitration must always move to compel under section 1281.2. We disagree.

"There is no merit to appellants' contention that Code of Civil Procedure section 1281.2 provides an exclusive statutory remedy to compel arbitration." (*King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 354 [175 Cal.Rptr. 226], fn. omitted.) "An order under Code of Civil Procedure section 1281.2 is not essential to the jurisdiction of a court to entertain a proceeding to confirm the award or to enter judgment thereon." (*Kustom Kraft Homes v.*

*Leivenstein* (1971) 14 Cal.App.3d 805, 810 [92 Cal.Rptr. 650].) Moreover, where an arbitration clause is self-executing, the party seeking arbitration need not resort to section 1281.2 prior to proceeding with the arbitration. (*Kustom Kraft Homes*, at p. 810.)

"A 'self-executing' arbitration clause is one which permits and provides for arbitration under rules therein incorporated. [Citation.]" (*Mitchum, Jones & Templeton, Inc. v. Chronis* (1977) 72 Cal.App.3d 596, 601 [140 Cal.Rptr. 160].) In *Kustom Kraft Homes v. Leivenstein*, the court held that an arbitration clause stating that " '[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof shall be settled by arbitration in accordance with the Rules of the American Arbitration Association . . .' " was sufficiently comprehensive to be self-executing, as it "import[ed] into the contract the entire scheme for arbitration as established by the rules of the American Arbitration Association." (*Kustom Kraft Homes v. Leivenstein, supra,* 14 Cal.App.3d at pp. 807, 811.) Such an arbitration clause, however, would not import any future rules not in existence at the time the contract was executed. (See *Gilbert Street, supra,* 174 Cal.App.4th at pp. 1187, 1194 [arbitration clause stating that arbitrations would be " 'conducted in accordance with the Rules of the American Arbitration Association existing at the date thereof' " did not incorporate rules not in existence at time contract was executed].)

Here, the arbitration clause provided that unless the claimed damages fell within the jurisdiction of small claims court, any dispute "shall be resolved pursuant to the rules of the American Arbitration Association, at its Los Angeles Office." This clause is sufficiently comprehensive to make it self-executing. For the first time on appeal, however, appellants contend the arbitration clause is not sufficiently comprehensive because it does not specifically reference which of the "over a dozen different sets of arbitration rules" of the AAA were being incorporated. We disagree.

As an initial matter, we note that appellants never raised this issue in the trial court, although the court requested supplemental briefing on whether the arbitration clause was self-executing, and appellants responded with supplemental briefing. Accordingly, appellants have forfeited the argument. (See *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73 [115 Cal.Rptr.2d 3] ["Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]"].)

Even absent forfeiture, appellants' contention lacks merit. First, appellants do not assert and have not demonstrated that more than one of the allegedly

dozens of "different sets of arbitration rules" would apply to this dispute. The fact that both the arbitrator and the trial court analyzed the dispute under the Commercial Arbitration Rules and Mediation Procedures of the AAA creates an inference that only one set of arbitration rules was applicable to the instant dispute. Second, the Commercial Arbitration Rules and Mediation Procedures of the AAA provide that those rules shall apply to an arbitration by the AAA of a domestic commercial dispute *even if* the particular set of rules was not specified in the arbitration clause. (AAA, Commercial Arbitration Rules and Mediation Procedures, as amended, eff. Sept. 1, 2007, rule R-1.) Accordingly, the arbitration clause's reference to "the rules of the [AAA]" was sufficiently specific to make the arbitration clause self-executing.

■ Respondent was thus entitled to proceed with the arbitration without first resorting to section 1281.2. Because the arbitration proceeded under a self-executing agreement, appellants ignored the arbitration at their peril. (See *National Marble Co. v. Bricklayers & Allied Craftsmen* (1986) 184 Cal.App.3d 1057, 1064 [229 Cal.Rptr. 653] ["Where an arbitration proceeds under a self-executing agreement without a preliminary court order, the objecting party is required to participate in the proceeding and then raise his objections by petition to vacate the award [citation] or by opposition to a petition to confirm. [Citations.]"]; see also *Titan Enterprises, Inc. v. Armo Construction, Inc.* (1973) 32 Cal.App.3d 828, 832 [108 Cal.Rptr. 456], disapproved in part in *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188 [151 Cal.Rptr. 837, 588 P.2d 1261] ["While an objector may, on a sufficient showing, stay the arbitration, the general policy is to require him to proceed with arbitration and then raise his objections either by opposition to a petition to confirm (as here) or by a petition under subdivision (d) of section 1286.2 of the Code of Civil Procedure to vacate the award."].)

## B. *Evidentiary Rulings*

Appellants next contend that the trial court's evidentiary rulings striking the declarations by Velasco, Escobar, and Levine for failure to aver that those declarations were made with personal knowledge resulted in the lack of substantial evidence to sustain the petitions to confirm the arbitration award. We disagree that the trial court erred in confirming the awards.

■ Under section 1286, a court must confirm an arbitration award (1) if the petition to confirm the arbitration award is properly filed and served and (2) if the court concludes that it does not need to correct or vacate the arbitration award. (§ 1286 ["If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made, . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding."].) A petition to

confirm an arbitration award must include the arbitration agreement, the name of the arbitrator, and a copy of the award and the written opinion of the arbitrator. (§ 1285.4.)

Here, the petitions to confirm the arbitration awards attached all of the required documents. There is no dispute that the petitions were properly filed and served. Thus, the superior court was compelled to grant the petition unless it determined that the awards must be corrected or vacated. Here, the trial court determined that it was unnecessary to correct or vacate the awards.

Appellants contend, however, that the awards must be vacated because respondent failed to establish the "existence of a valid arbitration agreement" because all of respondent's admissible evidence on this issue was stricken when the superior court sustained appellants' evidentiary objections. We disagree.

First, we can locate no authority to support the evidentiary objection that declarations lacking an averment that they were made on the basis of personal knowledge must be stricken. Under Evidence Code section 702, subdivision (a), "the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter." Personal knowledge, however, may be demonstrated by "any otherwise admissible evidence, including [the witness's] own testimony." (Evid. Code, § 702, subd. (b).) Moreover, Evidence Code section 702 does not prescribe any particular method to satisfy its personal knowledge requirement. In addition, the one case cited and quoted by appellants in support of their evidentiary objection, *Star Motor Imports, Inc. v. Superior Court* (1979) 88 Cal.App.3d 201 [151 Cal.Rptr. 721], is inapposite. It does not hold that an averment on the basis of personal knowledge is required before a declaration is made admissible under Evidence Code section 702; section 702 is nowhere mentioned in the case.

Second, although the declarations contain no express averments that they were made on the basis of personal knowledge, the statements in the declarations make clear that the declarants had actual personal knowledge. For example, Escobar made the following statement in his declaration: "When I appeared at [TMIG] on January 30, 2009, the first thing I did was to inquire of Mr. Christian as to when he was going to sign the contract." It is self-evident that this statement was made on the basis of Escobar's personal knowledge and not on the basis of "information and belief." Thus, there is sufficient evidence to demonstrate that the declaration met the requirements of Evidence Code section 702. After reviewing the other declarations, we conclude that the declarations sufficiently demonstrated that they were made on the basis of personal knowledge. Accordingly, the trial court erred in sustaining appellants' evidentiary objections.

■ In any event, there was sufficient evidence in the record to demonstrate valid arbitration agreements even if the declarations of Velasco, Escobar, and Levine were properly stricken. Appellants' only cognizable claims regarding the validity of the arbitration agreements are (1) that as to the TMIG agreement, it was executed by an employee not authorized to enter into agreements on behalf of TMIG, and (2) that as to the AIC agreement, it had expired prior to January 8, 2009, and was not renewed. (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 29–30 [10 Cal.Rptr.2d 183, 832 P.2d 899] ["If a contract includes an arbitration agreement, and grounds exist to revoke the entire contract, such grounds would also vitiate the arbitration agreement. Thus, if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether. [Citations.]"].)

■ As to the TMIG agreement, the trial court addressed the challenge to Christian's actual authority by finding he had ostensible authority to execute the contract on behalf of TMIG. This finding is supported by substantial evidence in the record. (See *Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 439 [103 Cal.Rptr.2d 305] [affirming a trial court's determination on ostensible agency where it is supported by substantial evidence].) First, Christian signed the written agreement as the "General Manager" for TMIG, and a general manager generally has the authority to enter into agreements for the corporation. (See *Pac. Concrete Products Corp. v. Dimmick* (1955) 136 Cal.App.2d 834, 838 [289 P.2d 501] [" 'The general manager of a corporation is more than a mere agent. Except as expressly restricted, he is empowered in the name of the corporation to do everything the corporation itself could do, and the power to perform a particular act will be inferred from his general authority.' [Citation.]"].) Second, the arbitrator found, based upon testimony at the arbitration hearing, that Christian "was in fact holding himself out as the General Manager and as one authorized to sign." Accordingly, we affirm the trial court's finding that Christian was TMIG's ostensible agent, and thus, we conclude that there was a valid arbitration clause that required TMIG to arbitrate this matter.

As to the AIC agreement, the trial court impliedly found that the agreement was not terminated on January 8, 2009, when it issued its order confirming the arbitration award in the AIC matter. Although appellants objected to the Calzada declaration, the trial court did not rule on this evidentiary objection. The Calzada declaration provides substantial evidence to support the trial court's finding that the contract was not terminated on January 8, 2009.[3]

---

[3] Appellants contend that the trial court should have stricken the Calzada declaration on the same basis as the other declarations—because the declaration lacked an averment that it was made on the basis of personal knowledge. As we have concluded that a declaration need not contain such an averment to satisfy the requirements of Evidence Code section 702, we find no abuse of discretion in the trial court's failure to sustain appellants' evidentiary objection to the

Therefore, the arbitration clause in the AIC agreement was valid. Accordingly, we reject appellants' claim that there was insufficient evidence to support the petitions to confirm the arbitration awards.

## C. *Remaining Claims of Error*

In light of our conclusion that respondent was not required to file a motion to compel arbitration before proceeding with the arbitration and that there was sufficient evidence to support the petitions to confirm the arbitration awards, appellants' remaining claims of error are harmless.

The fact that the trial court mistakenly found that appellants had participated in the arbitration process is harmless because that fact was the basis for the court's alternative holding that the arbitration award was confirmable. That fact is not necessary to sustain the superior court's judgment in light of our determination that appellants were bound by valid arbitration clauses.[4]

Similarly, even if the trial court erred in treating the motions to strike as judgments on the pleadings, any error is harmless, as the superior court was required to confirm the arbitration awards in this case. The confirmation of the arbitration awards rendered any remaining causes of action in the complaint for declaratory relief moot because it provided all of the relief requested by appellants—albeit in a manner adverse to appellants. The judgment provided an express or implied judicial determination on all of the issues raised in the complaint.

---

Calzada declaration. Moreover, as with the other declarations, Calzada's averment that "I have diligently searched . . . and can find no such notice of termination [of respondent's contract with AIC]" clearly reflected his personal knowledge.

[4] At oral argument, counsel for appellants indicated they did not participate in the arbitration for fear they would forfeit their right to challenge the validity of the arbitration clauses. Appellants' fear was unfounded. A party forfeits a challenge to the validity of an arbitration clause only where the party voluntarily participates in an arbitration without objecting to the clause's validity. (See, e.g., *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 329 [27 Cal.Rptr.3d 10] ["[A] party who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid is properly cast into the outer darkness of forfeiture."].) A party who participates under protest does not forfeit this claim. (*Ibid.*) Appellants could have participated in the arbitration while objecting to the validity of the arbitration clauses, and then raised their claims of invalidity in superior court. Additionally, appellants could have moved to stay the arbitration on the ground that the arbitration clauses were invalid. (See, e.g., *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 98 [284 Cal.Rptr. 255] [appellant moved to stay arbitration based, inter alia, on claims that his execution of document containing arbitration clause was obtained by fraud and that clause was contained in illegal contract of adhesion].)

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs.

Epstein, P. J., and Suzukawa, J., concurred.